IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

STEVEN BLACKSTONE

     v.

                            :   Civil Action No. DKC 13-3809

ST. MARY'S COUNTY SHERIFF'S
OFFICE, et al.

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this deprivation of property case is a motion to dismiss or, alternatively, for summary judgment, filed by Defendants Corporal Douglas Mills ("Cpl. Mills") and St. Mary's County Sheriff's Office.  (ECF No. 7).  The issues have been fully briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be granted.

**I.   Background**

The following facts are alleged in Plaintiff's complaint. In 2002, Plaintiff Steven Blackstone purchased a 1935 Diamler Limousine (serial number 26580) ("limousine") from Vintage Motors of Sarasota, Inc. in Florida.  (ECF No. 1 ¶ 7).  In 2007, Plaintiff had the vehicle transported via tractor trailer from Florida to St. Mary's County, Maryland.  (*Id.* ¶ 8).  When the trailer driver arrived in Maryland, he was notified that there

was an emergency that required his immediate return to Florida. The driver subsequently unloaded the limousine in the parking area of an abandoned store on Route 235 in St. Mary's County. (*Id.* ¶ 9).  Plaintiff alleges that he thereafter "routinely and continuously checked on the vehicle at least three (3) times a week for five (5) months."  (*Id.* ¶ 10).  Plaintiff never informed Elliot Burch - the owner of the parking area - that he was storing the limousine on his property.  On or about July 27, 2007, Plaintiff went to check on the limousine but discovered that it was no longer in the parking area of the abandoned store.  (*Id.*).

Plaintiff subsequently filed several replevin actions. First, in August 2007, Plaintiff filed a replevin action in the District Court of Maryland for St. Mary's County against Elliot Burch.  Subsequently, in October 2008, Mr. Burch filed suit against Plaintiff for initiating the replevin action.  At the hearing held in connection with Mr. Burch's lawsuit against him, Plaintiff alleged that Mr. Burch possessed the limousine, but Mr. Burch denied ever seeing it.  At the conclusion of this hearing, Plaintiff was allegedly approached "by an unknown woman [who] stated that she knew who had Mr. Blackstone's vehicle. The unknown woman informed the Plaintiff that an individual by

the name of John W. McNeil was in possession of his vehicle." (*Id.* ¶ 13).

Plaintiff subsequently filed a replevin action against John W. McNeil in October 2010 in the state district court. During the pendency of that action against Mr. McNeil, Plaintiff discovered that Mr. McNeil no longer possessed the limousine. Apparently, the limousine came into possession of Jennifer Crickenberger, Mr. McNeil's granddaughter. (*Id.* ¶ 14). Plaintiff then amended the complaint, adding Jennifer Crickenberger as a defendant.

The state district court entered judgment in favor of Jennifer Crickenberger. Plaintiff appealed the decision to the Circuit Court for St. Mary's County, which affirmed the judgment in favor Jennifer Crickenberger. (*Id.* ¶ 16). Plaintiff appealed that ruling to the Court of Special Appeals of Maryland, which also affirmed. Plaintiff requested a writ of certiorari in the Court of Appeals of Maryland.

Plaintiff filed the instant complaint on December 17, 2013 against Cpl. Douglas Mills and St. Mary's County Sheriff's Office. The Complaint alleges that Cpl. Mills removed the limousine from Big Ben's Towing and Recovery located in Charles County, Maryland on or about November 5, 2010. At that time, Big Ben's Towing had custody by virtue of a court order and,

according to the complaint, the limousine was titled and owned by Plaintiff.  The complaint includes claims arising under 42 U.S.C. § 1983 for alleged violations of the Fourth and Fourteenth Amendments (count I) and Article 24 of the Maryland Declaration of Rights (count II).  Plaintiff also asserts a claim for *respondeat superior* against St. Mary's County Sheriff's Office (count III).  Defendants moved to dismiss or, alternatively, for summary judgment on February 27, 2014.  (ECF No. 7).  Plaintiff opposed the motion on March 14, 2014 (ECF No. 8), and Defendants replied on March 28, 2014 (ECF No. 10).

## II.  Standard of Review

Defendants have moved to dismiss or, alternatively, for summary judgment.  The motion will be construed as a motion for summary judgment.  Summary judgment is governed by Fed.R.Civ.P. 56(a) which provides that: "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The Supreme Court of the United States has clarified that this does not mean that any factual dispute will defeat the motion: "[b]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no

4

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). "The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must set forth specific facts showing that there is a genuine issue for trial." *See Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (*quoting* former Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in [his] favor without weighing the evidence or assessing the witness' credibility." *See Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *See Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (*quoting Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) and *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**III. Analysis**

In their motion, Defendants refer to and attach portions of the court record from a state district court proceeding and the opinion of the Circuit Court. Defendants assert that, as public

records, this court may take judicial notice of those proceedings. Plaintiff does not challenge the authenticity of the records or the ability of the court to rely on them. Defendants also present the declaration of Joyce Miller regarding the lack of notice under the Maryland Tort Claims Act.

The additional materials supplement the facts as follows. Plaintiff never titled the limousine in his name while it was in Florida. Once towed to Maryland, the vehicle was left in the parking area of property owned by Elliott Burch, but Plaintiff never asked Mr. Burch for permission to leave it there. Eventually, Plaintiff filed four, not one, replevin actions against Mr. Burch. Three were dismissed, and one resulted in judgment for Mr. Burch. In connection with the replevin action against John W. McNeil, Plaintiff obtained a writ of attachment and served it on Mr. McNeil. After the writ was served, Plaintiff had the vehicle towed to Big Ben's Towing in Charles County. On October 18, 2010, the district court issued an Order for Service requiring the Sheriff's Office to take possession of the vehicle. (ECF No. 7-3). Cpl. Mills served the writ on November 5, 2010 and had the limousine towed from Big Ben's Towing to PJ's Auto Body in Lexington Park, St. Mary's County. (*Id.*; ECF No. 7-4).

Defendants also supply further history of Plaintiff's litigation with Mr. McNeil and Ms. Crickenberger, which resulted in a finding that Plaintiff had abandoned the limousine and that Ms. Crickenberger is the rightful owner. In light of the final judicial decision that Plaintiff has no property interest in the vehicle, it is difficult to see how Plaintiff has been harmed by the conduct of Cpl. Mills. Nevertheless, Defendants have asserted other grounds for ruling in their favor, which will be addressed below.

**A. Section 1983 Claim**

Defendants first argue that the statute of limitations has run on Plaintiff's Section 1983 claims. There is no federal statute of limitations for civil rights claims filed under 42 U.S.C. § 1983, and federal courts routinely measure the timeliness of federal civil rights suits by state law. *See Wilson v. Garcia*, 471 U.S. 261, 271 (1985). Maryland's general three-year statute of limitations for civil actions is most applicable to the case at bar. *See* Md. Code Ann., Cts. & Jud. Proc, § 5-101. Federal law, however, governs the question of when a cause of action accrues. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007). As a general rule, the statute of limitations starts to run when a plaintiff knows or has reason to know of his injury. *Id.*

7

The thrust of Plaintiff's Section 1983 claim is the removal of the limousine from Big Ben's Towing by Cpl. Mills on or about November 5, 2010.  Defendants argue that Plaintiff did not file his complaint until December 17, 2013 – more than three years later – making his claim untimely.   In his opposition to Defendants' motion, Plaintiff asserts that he "did not know that his automobile was illegally taken until December 18, 2010." (ECF No. 8, at 3).  Plaintiff further asserts that Cpl. Mills never informed him that he was removing the automobile "without any authorization from the court." (*Id.* at 4).

The statute of limitations is an affirmative defense that ordinarily must be pleaded and proven by the party asserting it. *See Newell v. Richards*, 323 Md. 717, 725 (1991) ("As a general rule, the party raising a statute of limitations defense has the burden of proving that the cause of action accrued prior to the statutory time limit for filing suit.").  When the parties rely solely on the pleadings, the defense will only prevail if it categorically appears on the face of the pleadings that the statute of limitations has run.   *See Alexander v. City of Greensboro*, 801 F.Supp.2d 429, 445 (M.D.N.C. 2011) ("[A]n affirmative defense . . . may only be reached at the [motion for judgment on the pleadings] stage if the facts necessary to deciding the issue clearly appear on the face of the

pleadings."). Although Plaintiff was under no obligation to plead facts in the complaint to show the timeliness of his claims, and, on a motion to dismiss, his claims would not be dismissed unless the facts alleged in the complaint conclusively showed that the statute of limitations has run, the result on summary judgment is different. The burden is on Defendants to show that the statute of limitations has run and they rely on the fact that the vehicle was towed on November 5, 2010, but Plaintiff did not file suit until December 17, 2013, more than three years later. In response, Plaintiff only contends, but provides no evidence, that he first learned on December 18, 2010 that the limousine had been towed. Plaintiff has not even supplied his own declaration attesting to this point. Fed.R.Civ.P. 56(c) requires a party asserting that a fact is genuinely disputed to cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." If he wished to claim that the statute of limitations did not begin to run on November 5, 2010, he should have presented materials to support his claim.

Moreover, if Plaintiff's assertion that he did not know that the removal was "unauthorized" because Cpl. Mills did not inform him about the existence *vel non* of legal process is meant to extend the date of his discovery of the cause of action, it fails. First, Plaintiff has again not supported the assertion with reference to record materials. Furthermore, the test is inquiry notice, which means "having knowledge of circumstances which would cause a reasonable person in the position of the plaintiffs to undertake an investigation which, if pursued with reasonable diligence, would have led to knowledge of the alleged [cause of action]." *Anne Arundel Cnty., Md. v. Halle Dev., Inc.*, 408 Md. 539, 562 (2009). Once on inquiry notice, Plaintiff had a duty to seek out facts supporting the cause of action. *See Edwards v. Demedis*, 118 Md.App. 541, 553 (1997). The fact that Cpl. Mills did not inform Plaintiff about the existence of legal process would have no effect on when the statute of limitations starts to run.

Even if Plaintiff's Section 1983 claim were timely, however, it does not survive summary judgment. Plaintiff asserts that when Cpl. Mills towed the vehicle on November 5, 2010, it was "titled and owned by the Plaintiff" and that Cpl. Mills did not have a warrant "as required by the Fourth and Fourteenth Amendments." (ECF No. 1, at 5). To state a proper

10

deprivation of property without due process claim, a plaintiff
must show: (1) "that he has a constitutionally protected
'liberty' or 'property' interest" and (2) "that he has been
'deprived' of that protected interest by some form of 'state
action.'" *Miller v. Hamm*, Civil No. CCB-10-243, 2011 WL 9185,
at *7 (D.Md. Jan. 3, 2011).   Plaintiff ignores the fact that
Cpl. Mills was acting pursuant to an order for service issued by
the district court on October 18, 2010.   (ECF No. 7-3).   The
order authorized – and required – Cpl. Mills to seize the
limousine pending the outcome of the replevin action filed by
Plaintiff against Mr. McNeil and Ms. Crickenberger.     As
Defendants point out, the vehicle was towed for purposes of
keeping it in a secure location until the litigation was
resolved.   Plaintiff's arguments that Cpl. Mills needed to
obtain a warrant in order to tow the limousine – *in addition to*
having a valid court order– is unavailing.

    Plaintiff's contention that the limousine was "titled and
owned" by him on November 5, 2010 is similarly misplaced.
Nothing on the record indicates that the limousine was actually
Plaintiff's at any point before the state district court
determined on April 26, 2011 that he had abandoned it. (ECF No.
7-2, at 3).   Indeed, the Schedule, Appraisal, and Return of
Levied Property Under a Writ of Execution, dated November 5,

2010 – the date the limousine was towed – indicates that the vehicle was *unregistered*, in very poor condition, and of unknown value.  (ECF No. 7-4).  Plaintiff's conclusory assertions that he owned the limousine when Cpl. Mills executed a valid order towing it finds no support on the record.  Accordingly, summary judgment will be granted to Cpl. Mills as to the Section 1983 claim.

**B. Maryland Declaration of Rights**

Plaintiff also asserts a claim for violation of Article 24 of the Maryland Declaration of Rights, premised on the same facts as his Section 1983 claim, namely that Cpl. Mills unlawfully deprived Plaintiff of his property when he towed the limousine on November 5, 2010 without first obtaining a warrant.

As an initial matter, Plaintiff has not complied with the notice requirement under the Maryland Tort Claims Act ("MTCA"), which precludes a claimant from "institut[ing] an action under this subtitle unless: the claimant submits a written claim to the Treasurer or a designee of the Treasurer within 1 year after the injury to person or property that is the basis of this claim."  Md. Code Ann., State Gov't § 12-106(b)(1).  The notice requirement is "a condition precedent to the initiation of an action under the Act."  *Johnson v. Maryland State Police*, 331 Md. 285, 189 (1993).

12

Defendants submit an affidavit from Joyce Miller, the Director of the Insurance Division with the Maryland State Treasurer's Office.  (ECF No. 7-6).  In this affidavit, Ms. Miller avers that she is the designee of the State Treasurer for purposes of the MTCA and that claims submitted against the State of Maryland and its personnel are forwarded to the Insurance Division for investigation and review.  (*Id.* ¶ 3).  Ms. Miller declares that "[t]he State Treasurer's Office's records have been thoroughly searched and . . . [it] has never received a claim from Steven Blackstone, or from anyone else, concerning a 1935 Diamler Limousine (serial #26580).  (*Id.* ¶ 7).  Plaintiff admits as much, but argues that he has good cause for failing to comply with the notice requirement.  (ECF No. 8, at 4). Specifically, Plaintiff asserts that he previously retained different counsel, who failed to advise him about the notice requirement.  Unfortunately for Plaintiff, the Court of Appeals of Maryland has repeatedly held that an action under the MTCA is barred by Plaintiff's failure to comply with the notice requirement.  *Johnson*, 331 Md. at 289.  Maryland courts have applied the notice requirement strictly.  *Id.*; *Glover v. Carroll County Sheriff's Dep't.*, Civil No. JKB-13-3192, 2014 WL 1330943, at *17 (D.Md. Apr. 2, 2014).  "Neither good faith, nor lack of prejudice, nor substantial compliance can overcome a

13

[p]laintiff's failure to provide written notice to the State treasurer within the one-year period prescribed by the MTCA." *Id.* Even if Plaintiff satisfied the notice requirement, however, his claim alleging violations of Article 24 of the Maryland Declaration of Rights would still fail as a matter of law for the same reasons discussed above concerning his Section 1983 claim. *See, e.g., Canaj, Inc. v. Baker & Div. Phase III*, 391 Md. 374, 424 (2006) (Article 24 of the Maryland Declaration of Rights is construed in *pari materia* with the Fourteenth Amendment to the United States Constitution). Accordingly, summary judgment will be granted to Cpl. Mills as to the state-law constitutional claim as well.

### C. *Respondeat Superior*

The complaint also includes a claim for *respondeat superior* against St. Mary's County Sheriff's Office. Defendants noted in their motion that the "Sheriff's Office" is not an entity capable of being sued. (ECF No. 7-1, at 8); *see e.g., Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 874 (4th Cir. 1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency."); *Hines v. French*, 157 Md.App. 536 (2004) (dismissing

14

the Harford County Sheriff's Office as a defendant because it "is not a separate legal entity capable of being sued"). In the opposition to Defendants' motion, Plaintiff asserts that he "has amended his complaint to name the proper party as the Defendant." (ECF No. 8, at 4). Contrary to this pronouncement, Plaintiff has not submitted an amended complaint.

Even if Plaintiff could amend his complaint to name the proper entity – St. Mary's County - the *respondeat superior* claim still fails on the merits. In support of the *respondeat superior* claim, Plaintiff alleges that the Sheriff's Office, as Cpl. Mills's alleged employer, was responsible for all the acts committed by Cpl. Mills within the scope of his employment. (ECF No. 1 ¶ 40). Plaintiff apparently seeks to "impute" Cpl. Mills's alleged constitutional violation to the County. There are several problems with the *respondeat superior* claim. First, a local government entity, like the County, has no *respondeat superior* liability under Section 1983. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978); *Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004).[1] Local government

---

[1] A local government entity can be held liable under Section 1983 where it is itself the wrongdoer. *Collins v. City of Harker Heights, Texas*, 503 U.S. 115, 122 (1992). Specifically, to hold a municipality liable under Section 1983, it must be shown that the "action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by

15

entities do, however, "have respondeat superior liability for civil damages resulting from State Constitutional violations committed by their agents and employees within the scope of the employment." *DiPino v. Davis*, 354 Md. 18, 51-52 (1999). Because Plaintiff has not established that Cpl. Mills committed a constitutional violation, however, the *respondeat superior* claim premised on a state constitutional violation also does not survive summary judgment.

## IV. Conclusion

For the foregoing reasons, Defendants' motion will be granted. A separate order will follow.

/s/
_____
DEBORAH K. CHASANOW
United States District Judge

---

that body's officers." *Monell*, 436 U.S. at 690. Local governments can also be sued for constitutional violations pursuant to a custom, even where the custom has not been formally approved through "the body's official decisionmaking channels." *Id.* at 691.

Here, even assuming Plaintiff could show a constitutional violation, he has not alleged that it was taken in connection with implementing a policy, ordinance, regulation, or decision by the County, or that the violation was pursuant to a custom. Even if Plaintiff could show that Cpl. Mills's act of towing the vehicle on November 5, 2010 amounted to a constitutional violation, it is well-established that a single incident of unconstitutional activity is generally insufficient to prove the existence of a municipal custom or policy. *Semple v. City of Moundsville*, 195 F.3d 708 (4th Cir. 1999); *Wallace v. Poulos*, 2009 WL 3216622, at *13 (D.Md. Sept. 29, 2009).